UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

| VALONDA SMITH, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | CAUSE NO. 4:15-CV-29 |
| v. | ) | |
| | ) | |
| CAROLYN W. COLVIN, COMM'R OF SOC. SEC., | ) ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

An administrative law judge denied Valonda Smith's application for Social Security disability insurance benefits. Smith claims that the ALJ erred by not affording controlling weight to her treating physician. Because I agree that the ALJ improperly weighed the medical evidence, I will **REVERSE** the ALJ's decision and **REMAND** on this issue.

**Background**

Smith has a long history of back pain. After having several procedures and injections in during 2009 and 2010, Smith began seeing a physician at the Pain Care Center in the fall of 2010, complaining of radiating back pain. (R. 289, 292, 294, 300, 355.) She saw one physician there, Dr. Ramos, regularly over the next few years until it appears that Ramos may have left the practice and Dr. Robert C. Bigler took over Smith's care. Smith first began seeing Bigler at the Pain Care Center in November 2012.

1

(R. 515) Smith reported that she was experiencing shooting back pain that was exacerbated by sitting, standing, walking, and bending and was rated as a 7/10 on the pain scale. (*Id*.) She also reported that her medications were becoming less effective. (*Id*.) Upon examination, she was able to move about with only mild pain and exhibited no pain behavior. (*Id*. at 516.) Her straight leg test was also negative. (*Id*. at 517.) Dr. Bigler diagnosed Smith as having myofascial pain syndrome and lumbar canal stenosis. (*Id*.) He also increased two of her medication dosages, and ordered her to follow up in six months. (*Id*.)

Smith came back sooner, though. A couple of months later, in January 2013, Bigler performed a procedure on Smith called a bilateral L4 selective nerve root injection to treat her pain caused by lumbar radiculopathy. (*Id*. at 527.) Smith returned again a month later for another injection from Bigler. (*Id*. at 525.) Two months later, she was back for a full examination with Bigler. She reported back pain at a level of 6/10 and stated it was relieved by sitting, lying down, and pain medication, although the medications were becoming less effective. (*Id*. at 512.) She also reported that the pain interfered with her activities of daily living. (*Id*.) On exam, she still exhibited only mild pain and no "pain behavior," but this time, she had a shuffled gait. (*Id*. at 513.) The rest of her exam was unchanged since November 2012, but her diagnoses were now postlaminectomy syndrome, myofascial pain syndrome (as before) and lumbar radiculopathy (as diagnosed at her injection appointments). (*Id*. at 514.) Bigler made

some adjustments to her medications, including trying a new one, and suggested stimulation therapy. (*Id*.) He ordered Smith to return in four months. (*Id*.)

About five months later, Smith returned to Bigler for another nerve root injection. (*Id*. at 523.) She saw him again the next month for another injection. (*Id*. at 521.) The following month, Bigler issued a medical source statement finding that Smith could stand/walk for only 60 minutes at a time; stand for 60 minutes in a workday; sit for 60 minutes in a workday at one time; sit for less than 60 minutes in total in a work day; lift 20 pounds occasionally; bend occasionally; stoop or balance frequently; and would need to elevate her legs during an 8-hour work day. (*Id*. at 545.) He found that she suffered from moderate pain that would interfere with her attention and concentration frequently, but that she would never be absent from work due to her back issues. (*Id*.) He listed her diagnoses as lumbar radiculopathy, lumbar facet syndrome, postlaminectomy syndrome, and lumbar canal stenosis. (*Id*.)

Backing up a couple of years to during the time Smith was seeing Dr. Ramos at the Pain Care Center, Smith underwent a consultative examination in August 2011 by Dr. William Bray. Bray found that her range of motion was only somewhat limited and that "[h]er primary issue is that of tolerance to pain." (R. 446) That same month, a state agency consultant found Smith could perform light work, but could not climb ladders, ropes, scaffolds and needed to avoid exposure to wetness and hazards. (R. 448-455.) That consultant, Dr. Dobson, stated that his findings did not differ significantly from

Bray's, but that he did disagree with the limitations Bray placed on walking and standing. (R. 454.)

And that's the sum total of the medical records detailing Smith's back issues. In weighing the opinions, the ALJ gave partial weight to the opinion of state agency consultant, Dobson, "because it is overly optimistic. The record shows that the claimant's symptoms and the objective findings limit her to sedentary exertion." (R. 26.) She then afforded Bray's opinion little weight "because it is also overly optimistic and the record clearly shows that the claimant presents physical limitations that would limit him [sic][1] to working at the sedentary level of exertion." (*Id.*) It should be noted that these two opinions were issued in August 2011.

As for Bigler's opinion issued in November 2013, the ALJ afforded it "very little weight" because "there are not any treating notes to support his assessment. Moreover, there is contradictory information within the assessment itself." (R. 27) Smith argues that the ALJ erred by not affording Bigler's opinion controlling weight as her treating physician.

**Discussion**

If an ALJ's findings are supported by "substantial evidence," then they must be sustained. *See* 42 U.S.C. § 405(g). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

---

[1] The ALJ mistakenly used the masculine pronoun "him" on occasion when referring to Ms. Smith throughout her opinion.

*Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Review of the ALJ's findings is deferential. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). "Although this standard is generous, it is not entirely uncritical and the case must be remanded if the decision lacks evidentiary support." *Id.* (internal quotation marks omitted). In making a substantial evidence determination, I must review the record as a whole, but I can't re-weigh the evidence or substitute my judgment for that of the ALJ. *Id.*

Smith objects to the ALJ's decision on one ground: that the ALJ failed to give controlling weight to Dr. Bigler, Smith's treating physician. I agree that the ALJ's decision to discount Smith's treating physician's opinion was not supported by substantial evidence, particularly in light of the fact that she didn't fully credit any other opinion, as well. For this reason, I cannot say that the ALJ's decision was supported by substantial evidence and I will therefore remand this back for further consideration.

A treating physician's opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence" in the record. 20 C.F.R. § 404.1527(d)(2); *see White v. Barnhart*, 415 F.3d 654, 658 (7th Cir. 2005). Once well-supported contradicting evidence is introduced, however, the treating physician's opinion is no longer entitled to controlling weight and becomes "just one more piece of evidence for the [ALJ] to weigh." *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008). This rule takes into account the treating physician's advantage in "having personally

5

examined the claimant and developed a rapport, while controlling for the biases that a treating physician may develop such as friendship with the patient." *Oakes v. Astrue*, 258 Fed.Appx. 38, 43-44 (7th Cir. 2001) (internal citation omitted); *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001). If an ALJ decides not to give controlling weight to a treating physician's opinion, however, she must explain her reasons for doing so. *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011). Failure to do so is cause for remand. *Id.* And that's where the ALJ's opinion here gets into trouble.

Although the Commissioner raises the issue of whether Bigler should be a treating source, I don't think there's any question that he is. Bigler examined or treated Smith about every other month over the course of about a year. That's much more frequent that the types of relationships discussed in the cases cited by the Commissioner. (*See* DE 20 at 8.) So Bigler is a treating physician – as the ALJ properly assumed (R. 26). And to be clear, the ALJ didn't ignore Bigler's opinion. But even so, the ALJ gave it a pretty cursory treatment and then, problematically, failed to adequately explain why she was accepting or discounting various parts of Bigler's opinion, or even what parts she was crediting or rejecting in affording the opinion "very little weight." And the reasons she *did* identify – that there were no treating notes to support Dr. Bigler's assessment and that his assessment was internally contradictory – aren't well-supported or explained much.

Throughout her decision, the ALJ runs through each physician's findings and then towards the end, weighs the opinions. Interestingly, there's not a single opinion

6

she accepts entirely, which in and of itself isn't a problem. But what *is* a problem is the lack of explanation for the parts she either accepts or discounts, particularly regarding Dr. Bigler. For example, the ALJ's primary reason for not fully crediting Bigler's opinion is the fact that there were no treatment notes to support his opinion. (DE 26.) That's simply not true. As discussed above, Bigler saw Smith about six times over the course of a year. Each of those visits included treatment notes indicating Smith's issues, treatments, and follow up actions. His notes indicate that Smith was in pain, received multiple treatments to address that pain, and that those treatments were not working well, necessitating further treatments and changes to her medications. Maybe the ALJ doesn't believe that the findings were severe enough to warrant Bigler's assessment of Smith's restrictions; or maybe she doesn't believe the notes were detailed enough to paint a clear picture of Smith's ailments. The point here is that I don't really know why the ALJ discounted Bigler's opinion because she didn't *explain* why. And moreover, I don't even know which parts of Bigler's opinion she did credit, because she doesn't say what she's crediting or discounting – only that she's giving the opinion "very little weight." (R. 26.)

An ALJ's failure to explain why she is discounting a treating physician's opinion is cause for remand. *Scott*, 647 F.3d at 740. That's, in part, because an ALJ must build a logical bridge from the evidence to the conclusion. *Groves v. Apfel*, 148 F.3d 809, 811 (7th Cir. 1998). In other words, even though the evidence relied on by the ALJ to reach her conclusions may constitute contradicting evidence such that she could discount Bigler's

7

opinion, the ALJ must explain why that's the case. Specifically, "the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Scott*, 647 F. 3d at 740.

Evaluating the factors outlined in *Scott* and other cases, it's apparent that Dr. Bigler's opinion as a treating physician should have been given controlling weight: he is a pain specialist who examined and treated Smith frequently and was the most familiar with her case. The largest quibble the ALJ has with Bigler's statement is a supposed inconsistency between Bigler stating that Smith would never be absent from work and yet her pain would frequently interfere with her concentration. There is no indication as to why these outcomes are mutually exclusive – why can't someone show up for work every day, yet frequently be off-task because she's in pain? The ALJ doesn't explain. The ALJ takes further issue with the fact that Bigler said Smith could stand or walk for 60 minutes at a time in the work day, but could also frequently stoop and balance. Again, there is no indication as to why these two are mutually exclusive – why can't Smith frequently stoop and balance during her 60 minutes of walking or standing?

The ALJ's complaints about Bigler's opinion might be warranted if she was relying on other substantial evidence that contradicted Bigler's opinion. 20 C.F.R. § 404.1527(d)(2); *see White*, 415 F.3d at 658. But here, the only other medical opinions are two consulting physicians from two years prior to Bigler's opinion. And even then, the ALJ didn't fully credit their opinions, giving only partial weight to one and little weight

8

to the other. (R. 26.) As with Bigler, the ALJ didn't indicate which parts of their opinions she was crediting or denying, or why their opinions might be more persuasive than Bigler's. So, it's very unclear to me what evidence the ALJ was relying on in deciding that Dr. Bigler's opinion shouldn't be given controlling weight. This strikes me a classic case of "cherry-picking" that the Seventh Circuit has denounced time and time again. *Scott*, 647 F.3d at 740; *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

That's not to say that every ALJ must accept or reject every opinion whole-cloth. But what they need to do is base their decisions as to what to accept or reject on substantial evidence. And that simply didn't happen here. Supposed inconsistencies aside, Dr. Bigler's statements and notes remain the only significant – and recent – source of medical evidence in this case. And one thing an ALJ cannot do is substitute her own judgment for that of a medical professional, or make medical conclusions about a claimant's illness, without relying on medical evidence. *See Clifford*, 227 F.3d at 870; *Green v. Apfel*, 204 F.3d 780, 781-82 (7th Cir. 2000). Here, the ALJ gave only partial weight, little weight, and very little weight to each of the medical opinions. So what did she actually rely on in reaching her conclusion? It seems to me that when the ALJ attempted to refute Dr. Bigler's statements, the dearth of medical evidence led her to rely on her lay judgments about medical records and cherry-pick bits and pieces without much reason to do so. And that's simply not allowed.

But the ALJ's transgressions could be harmless if crediting Dr. Bigler's opinion would still result in a finding that Smith could do sedentary work (*i.e.* if it didn't impact

9

the outcome of the case). *Shramek v. Apfel*, 226 F.3d 809, 814 (7th Cir. 2000). The problem here is that it's not clear whether that would be the case. For example, when answering how often Smith's pain or other symptoms "were severe enough to interfere with attention and concentration," Bigler found that would occur "frequently" (as opposed to never, occasionally, or constantly). (R. 545.) The VE testified that if Smith was off-task more than 10% of her day, it would eliminate all jobs for her. (R. 73.) Admittedly, I don't know for certain whether "frequent" interference with attention and concentration would result in being off-task for more than 10% of Smith's day, but it seems reasonable to assume that it would. In any event, that's something the ALJ should have explored given that the answer may have changed the case outcome if she had fully credited Bigler's opinion.

Further, Bigler found that Smith could sit for less than 60 total minutes a day, stand or walk for only 60 minutes total a day and that she would need to elevate her legs for an unspecified period of time during an 8-hour work day. (R. 545.) So if she could sit or stand for only two hours total in a work day, what else would she be doing for the other six or so hours? If you believe Smith, she would need to lie down for at least a portion of that time. (R. 66.) Bigler doesn't specify what Smith would be doing the rest of the time other than to say that she'd need to elevate her legs for some unspecified time period during the work day. (R. 454.) So maybe he thought she'd be lying down, or elevating her legs, or maybe she'd just be sitting or standing in pain

during those six hours. But the point is that if Bigler's opinion was fully credited, it'd be hard to see how Smith could perform even a sedentary job.

That's not to say that I'm finding Bigler's opinion should be fully credited. That's for the ALJ to decide on remand. My biggest qualm is the lack of explanation from the ALJ for how she was weighing the various opinions, particularly in light of the fact that none of them received much weight. Based on her written decision, I don't know which parts of any one opinion she was crediting or rejecting and I don't know which evidence supposedly supported or contradicted those findings. More is needed here.

At bottom, Smith has a long history of back pain that she's sought treatment for with varying degrees of success over the years. I don't know if Smith is ultimately disabled or not, but that's not what I'm tasked with determining. Instead, I'm tasked with determining whether the ALJ followed the proper protocol in denying Smith's benefits. Here, I find she did not. I therefore find that the ALJ's decision to not give Dr. Bigler's opinion controlling weight was not supported by substantial evidence, particularly in light of the fact that she did not make clear what evidence she was relying on.

## CONCLUSION

For the reasons stated above, the ALJ's decision denying benefits is **REVERSED** and this cause is **REMANDED** for further proceedings consistent with this order.

**SO ORDERED.**

ENTERED: July 14, 2016              s/Philip P. Simon
                                                     PHILIP P. SIMON, CHIEF JUDGE
                                                     UNITED STATES DISTRICT COURT